IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HAZEL CALCAÑO LOPEZ, et al.,

Plaintiffs

v.                                                              CIVIL 97-2255 (SEC) (JA)

LUIS CANETTI MIRABAL, et al.,

Defendants

## OPINION AND ORDER

Plaintiff Hazel Calcaño López[1] (hereinafter "Calcaño"), a resident of Mississippi, filed this medical malpractice suit on August 20, 1997, against her treating physicians, Dr. Canettti-Mirabal ("Canetti") and Dr. Curet-Ramos ("Curet"), and against the Hospital Interamericano de Medicina Avanzada, Inc. (hereinafter "HIMA"), and its employee, Elizabeth Ortiz-Zayas ("Ortiz"). Jurisdiction is based on diversity of citizenship. In her complaint, plaintiff Calcaño alleges that she suffered injuries as a result of co-defendants Dr. Canetti's and Dr. Curet's negligence during the course of her treatment and surgery. Plaintiff further alleges that the physicians were negligent in delaying subsequent treatment once it became apparent that something had gone wrong during Calcaño's first surgery. Calcaño also contends that during her hospitalization she was negligently cared for by HIMA and its employees, including respiratory therapist Ortiz, and that said negligence contributed to her injuries.

---

[1] Plaintiff's sister, Judith Calcaño López is also a plaintiff in this suit.



AO 72
(Rev. 8/82)

On December 20, 1999, co-defendants HIMA and Ortiz filed a motion entitled "Motion Requesting a Determination Concerning HIMA's Responsibility for Alleged Damages." (Docket No. 55.) Plaintiffs filed a response to that motion on March 23, 2000. (Docket No. 68.) Defendants, in turn, filed a surreply on May 2, 2000. (Docket No. 70.) All of the aforementioned motions were accompanied by exhibits.

In their reply, plaintiffs argue that although defendant HIMA's motion is not characterized as a summary judgment motion, it should nevertheless be treated as such. I agree. In its surreply, HIMA contends that the standard for summary judgment is inapplicable because "the issue raised [in its original motion of December 20, 1999] is exclusively an issue of law and the specific facts not in controversy support such legal determination." (Docket No. 70, at 1.) The self-styled characterization of the motion in fact supports this court's view.

STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see, e.g., Sands v. Ridefilm Corp., No. 99-2006, 2000 WL 622842, at *3 (1st Cir. May 18, 2000). The critical question is whether a genuine issue of material

CIVIL 97-2255 (SEC) (JA)                    3

fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonado Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court is obliged to review the record in the light most favorable to the nonmoving party and indulge all justifiable inferences favorable to that party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997).

In this district, Local Rule 311.12 mandates that annexed to a summary judgment motion, the moving party file "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." Local Rule 311.12; see, e.g., Century 21st Real Estate Corp. v. Century 21 Real Estate, Inc., 929 F.2d 827, 828 (1st Cir. 1991); Laracuente v. Chase Manhattan Bank, 891 F.2d 17, 19 (1st Cir. 1989); United Structures of Am. v. G.R.G. Eng'g, S.E., 927 F. Supp. 556, 561 (D.P.R. 1996). Since HIMA does not regard its motion as one for summary judgment, it has not submitted a 311.12 statement. Nonetheless, within the motion itself,

CIVIL 97-2255 (SEC) (JA)                    4

HIMA included a section of "undisputed facts not in controversy." In turn, plaintiff responded to HIMA's motion as if it were a summary judgment motion and filed the requisite 311.12 statement. Given Local Rule 105, which allows this court to suspend or modify any of the requirements of the local rule, I find that HIMA's failure to file the requisite 311.12 motion is immaterial since the information contained within the motion itself satisfies the purpose of Rule 311.12. Thus, the facts viewed in the light most favorable to plaintiff Calcaño are set forth below.

## FACTS

The following is a summary of the many allegations contained in Calcaño's complaint in support of her assertion that her physicians and HIMA's personnel acted negligently during the course of her medical treatment. In October of 1996, plaintiff Calcaño visited defendant Dr. Curet's office, due to severe back pain and excessive vomiting. After several laboratory analyses and an abdominal ultrasound study, Dr. Curet diagnosed Calcaño as having pancreatitis and gall bladder stones. He informed Calcaño that she needed an operation. On October 8, 1996, Dr. Curet ordered plaintiff's hospitalization at HIMA's medical facilities and referred Calcaño to Dr. Canetti for surgery. It is undisputed, as defendant HIMA contends, that plaintiff Calcaño did not enter HIMA through the emergency room facilities and that she remained at all pertinent times a patient of Dr. Curet and Dr. Canetti.

On October 9, 1996, at about 7:00 a.m., plaintiff was seen by Dr. Canetti for the first time. Dr. Canetti informed plaintiff that he was going to perform a laparoscopic surgery upon her that same morning. He described the procedure as simple: she would be operated through the navel, she would be able to walk in three hours, and she would be discharged from the hospital in two days.

Calcaño's laparoscopic surgery was completed before noon, on October 9, 1996. After plaintiff was returned to the recovery room, she was already experiencing intolerable pain and a burning sensation in the stomach area. In addition, she was feeling an awkward movement of loose liquids in her abdomen. When Calcaño informed defendant, Dr. Canetti, and the nurses about this situation, she was given Demerol and Vistaril, but she did not improve. At about 6:00 p.m. she was taken from the recovery room and returned to her room.

When Dr. Canettti came to see plaintiff the next morning, Calcaño allegedly informed him of her symptoms (the abdominal burn and pain) to no avail. Later that day plaintiff tried to get up from bed and felt that she could not breathe. Her sister then ran to the nurses' station for help. It is plaintiff's contention that HIMA and its personnel were negligent in delaying her treatment, by failing to provide a therapist and an oxygen mask immediately.

AO 72
(Rev. 8/82)

Dr. Curet, who arrived three hours later, informed plaintiff's sister that Calcaño's respiratory problems could have been caused by a "trombo," or thrombosis. He referred plaintiff to the attention of Dr. Arnulfo Santana, a pneumologist, who ordered a ventilation-perfusion scan at the Nuclear Medicine Laboratory in order to verify the preliminary diagnostic of pulmonary embolism. Calcaño alleges that at this point in time she again complained to her doctors and HIMA's personnel of a terrible pain and burning sensation in her abdomen; and that again nothing was done. The ventilation-perfusion scan was not completed because Calcaño could not tolerate her abdominal pain. Nonetheless, it was determined that Calcaño indeed had a pulmonary embolism.

On the morning of October 11, 1996, Drs. Curet and Canetti informed Calcaño that she needed to be transferred to the intensive care unit. Plaintiff was not moved to said unit until 5:30 in the afternoon. Again, Calcaño asserts that HIMA was negligent in delaying her transfer to the intensive care unit, given her delicate condition. On October 12, 1996, four days after the first surgery, Calcaño was taken to the radiology department for an abdominal CT scan. The test revealed that Dr. Canetti had injured plaintiff's bile duct and as a result she had developed a "bilioma" or biliar tumor. Dr. Canetti told Calcaño that she needed a second surgery. Calcaño was submitted to a second operation on October 14, 1996.

Plaintiff's complaint is replete with allegations in support of her contention that both her doctors and HIMA's employees were negligent in conducting this second operation and in providing her with adequate care after the operation. For example, Calcaño alleges that Ortiz, a respiratory therapist employed by HIMA, was negligent when treating Calcaño and that such negligence aggravated plaintiff's injuries. (See Docket No. 11, complaint, paragraphs 66 through 71, for a detailed description of Ortiz' alleged negligent actions). Calcaño's condition deteriorated when she contracted a bacteria through an endotracheal respiratory tube that had been used during her second surgery. She was given an antibiotic for three days, but failed to improve. Plaintiff further contends that she was experiencing secondary effects to said medication which pointed to a possible allergic reaction, but nonetheless HIMA's nurses and doctors ignored her complaints.

Some days later, Calcaño began to bleed excessively. This emergency situation lasted for about two hours, when plaintiff was finally examined by Dr. Ruiz, a gastroenterologist, who had to submit her to an esophageal-gastric-duodenal endoscopy without anesthesia. It was later found that Calcaño had an ulcer and that the anti blood-clotting medication that had been given to her had increased the hemorrhage. Calcaño received four blood transfusions.

On October 24, 1996, plaintiff was informed by Dr. Aponte, a general surgeon, that she needed an additional surgery. Once again, in her complaint, Calcaño details the

procedure that she was submitted to and the way in which both the doctors and HIMA's personnel failed to provide her with adequate care during this surgery. Furthermore, Calcaño specifies how that alleged negligence contributed to her deterioration. (Docket No. 11, paragraphs 79-82.)

On October 28, 1996, after spending seventeen days in the intensive care unit, Calcaño was finally sent to a regular room. Calcaño alleges that while in said room, she fell to the floor because she was dizzy and that although she called for help with her buzzer, no one came to help her. Calcaño further asserts that she was still not totally recuperated when she was expeditiously discharged from HIMA's facilities on October 30, 1996. She alleges that she was discharged prematurely because HIMA's physicians were supporting a strike against the government's health reform efforts.

In her complaint, Calcaño details her ordeal after discharge from the Hospital and how her condition precluded her from engaging in everyday activities, such as working and caring for her children. In essence, Calcaño asserts, throughout her complaint, that in numerous occasions both her doctors and HIMA's personnel provided her with substandard care, misinformed her about the risks involved in the procedures that she was submitted to, and were negligent in their failure to respond to her continuous complains of pain and discomfort.

It is undisputed that Dr. Canetti and Dr. Curet are not employees of HIMA. Both doctors have privileges extended by HIMA to use its facilities. HIMA asserts that both doctors are qualified physicians in good standing. HIMA further alleges, that it had no knowledge by the time of the incidents relative to the complaint, of any action or omission by any of these two doctors for which privileges should have been revoked. As a matter of fact HIMA contends that prior to this case, Dr. Canetti had performed over forty (40) laparascopic procedures similar to plaintiff's and all of them had been successful.

## THE LEGAL STANDARD–MEDICAL MALPRACTICE

The law applicable in this diversity suit is that of the Commonwealth of Puerto Rico. Erie R.R. v. Tompkins, 304 U.S. 64, 68 (1938). "To establish a prima facie case of medical malpractice in Puerto Rico, a plaintiff must demonstrate: (1) the basic norms of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of the patient; and (3) a causal relation between the act or omission of the physician and the injury suffered by the patient." Lama v. Borrás, 16 F.3d 473, 478 (1st Cir. 1994) (citing Sierra Pérez v. United States, 779 F. Supp. 637, 643 (D.P.R. 1991)); see also Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993) (describing elements of medical malpractice in Puerto Rico). In a medical malpractice suit, a plaintiff may sue a doctor, a hospital, or both, as long as he/she can establish negligence on the part of each particular defendant.

This is so because a hospital may be found vicariously liable for the negligence of its employees. See, e.g., Lama v. Borrás, 16 F.3d at 480-81 (discussing negligence and the prima facie elements of a medical malpractice suit against a hospital); see also Blas Toledo v. Hospital Nuestra Señora de La Guadalupe, 98 JTS 101, 1410, 1430-32 (discussing various ways in which a hospital may incur in liability for negligence when treating a patient); see also Recio v. Hospital del Maestro, 882 F. Supp. 220, 227-28 D.P.R. (1995) (for a discussion of vicarious liability of a hospital).

In the instant case, however, defendant HIMA is not refuting (although neither admitting) that it may be independently liable to plaintiff Calcaño for the alleged negligent acts committed by its employees. Rather, what HIMA argues is that it should not be held jointly liable for the alleged negligence of Dr. Curet and Dr. Canetti. The leading case on the liability of a hospital for the medical malpractice of a physician is Marquez Vega v. Martínez Rosado, 116 D.P.R. 397 (1985). In Marquez, Puerto Rico's Supreme Court had to decide whether a hospital could be held jointly and severally liable based solely upon the medical malpractice of a doctor not employed by it, to whom it had granted hospitalization privileges. Marquez Vega v. Martínez Rosado, 116 D.P.R. at 406. "The Court made clear . . . that a hospital has a continuous duty to: (a) carefully select the physicians to whom it grants privileges; (b) require that such physicians stay abreast of the most recent developments in their respective fields; (c) monitor the work of such physicians,

CIVIL 97-2255 (SEC) (JA)                  11

intervening, when possible, in the face of an obvious act of medical malpractice by one of them; (d) discontinue the privileges of any physician in the event of repeated or crass acts of medical malpractice; and (e) keep reasonably up to date with respect to the most technological advances." Recio v. Hospital del Maestro, 882 F. Supp. at 224 (citing Marquez Vega v. Martínez Rosado, 116 D.P.R. at 409-10), aff'd sub nom Daniels-Recio v. Hospital del Maestro, Inc., 109 F.3d 88 (1st Cir. 1997); see also Carlos J. Irizarry Yunqué, Responsabilidad Civil Extracontractual 315 (1998); see also Heddinger v. Ashford Memorial Comm. Hosp., 734 F.2d 81, 85-86 (1st Cir. 1984) (hospital was found jointly liable for the negligent harm caused by the attending physicians, who were not employed by the hospital).

There are several similarities between Marquez and the instant action. First, as in Marquez, plaintiff Calcaño has sued both, the hospital (HIMA) and her attending physicians, Dr. Curet and Dr. Canetti, who enjoyed privileges at HIMA, but were not employed by HIMA. Also, as in Marquez, plaintiff Calcaño was the doctors' private patient, and was hospitalized upon their instructions. For purpose of this motion I will assume, without deciding, that as alleged by HIMA, defendant's Drs. Curet and Canetti had the requisite privileges to practice medicine at HIMA's facilities at the time of the

CIVIL 97-2255 (SEC) (JA)                    12

alleged incidents.[2] Nonetheless, the situation in Marquez is distinguishable from the present one, since Calcaño has alleged a plethora of facts that at present are uncontroverted, and that might be sufficient as a matter of law to hold the hospital (HIMA) jointly and severally liable for Calcaño's negligent treatment and diagnosis.

From a reading of its motion, it appears that defendant HIMA understands that the present case is distinguishable from Marquez. Nevertheless, HIMA argues is that it should not be held *jointly* liable for the alleged negligence of Dr. Curet and Dr. Canetti, but rather *severally* liable. In essence, co-defendant HIMA is asking this court to bifurcate the term "jointly and severally" liable and make a finding, as a matter of law, that HIMA is only "severally" liable for whatever negligence, if any, they engaged in. This, I will not do.

According to Black's Law Dictionary, the term "Joint and Several liability" means that defendants are responsible for an alleged harm both together and individually. The person who has been harmed has the choice of suing and recovering damages from both wrongdoers or from either one of the wrongdoers (if he/she goes after both of them, he/she does not, however, receive double compensation). The choice belongs to the plaintiff. Calcaño has chosen to sue both, her private physicians and HIMA (the hospital where she was treated). She has asserted enough facts to support a finding of negligence on the part

---

[2] Plaintiffs, in their reply (Docket No. 68) have for the first time brought forth facts, that might put into question the validity of Canetti's and Curet's privileges at HIMA.

CIVIL 97-2255 (SEC) (JA)                    13

of both, the physicians and HIMA. The issue of whether Calcaño's damages were caused by her doctors' negligence, by the negligence of HIMA's employees, or by a combination of both is one for the jury and not one for this court to make.

In view of the above, defendants' motion (Docket No.55) is hereby DENIED.

In San Juan, Puerto Rico, this 6th day of June, 2000.

*[signature]*
JUSTO ARENAS
United States Magistrate Judge